UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                                          Chapter 11

402-420 Metropolitan Ave LLC                                     Case No.

                                        Debtor.
---------------------------------------------------------------x

## DEBTOR'S DECLARATION
## PURSUANT TO LOCAL BANKRUPTCY RULE 1007-4

David Goldwasser declares the following under penalties of perjury pursuant to 28 U.S.C. § 1746:

1.  My firm, GC Realty Advisors LLC, has been recently engaged by 402-420 Metropolitan Ave LLC (the "Debtor") to act as the Debtor's restructuring officer and non-member manager for the purposes of assisting the Debtor in the prosecution of its Chapter 11 case. I have reviewed relevant financial and legal information relating to the Debtor's business affairs. This Declaration is based on this review, which is ongoing.

2.  In my capacity as Chief Restructuring Officer and non-member manager, I respectfully submit this Declaration in accordance with Local Bankruptcy Rule 1007-4 in support of the Debtor's filing of a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

### Events Necessitating the Chapter 11 Filing

3.  The events surrounding this Chapter 11 filing can be summed up in one solitary event – "Covid 19", which has dramatically changed the landscape for real estate transactions in New York City, if not nationwide.

4.  The Debtor is the intended purchaser of real estate development property located at 402-420 Metropolitan Avenue, Brooklyn, NY (the Property"). Last August, the

Debtor entered into a certain Purchase and Sale Agreement (the "Sale Contract") to acquire the Property from 402 Metropolitan Ave LLC and HWM Met/Marcy LLC, as joint sellers (collectively, the "Sellers").

5. The Property is a former Capital One Bank location, which will be demolished and redeveloped as a 135 unit residential apartment building with commercial space (the "Project"). The Project also contemplates the Debtor's acquisition of air rights from a neighboring property owner.

6. The Sale Contract calls for a total purchase price of $21,500,000, including a deposit of $2,150,000 (the "Deposit"), which was previously funded by loans and advances.

7. Pursuant to the Sale Contract, April 2, 2020 (time of the essence) is currently scheduled as the closing date. However, given the today's unprecedented business environment, with New York City virtually quarantined by City and State shelter in place orders, stores, restaurants and non-essential services closed, and the world-wide capital markets in flux, gyrating like a Coney Island roller coaster, the Debtor (like virtually every other local real estate company) finds it next to impossible to proceed with the April 2, 2020 closing, or any time until after the pandemic ends. The magnitude of the current crisis is beyond anyone's reasonable contemplation, and will surely generate litigation for months and years to come concerning legal issues surrounding the suspension of contractual rights and duties during the time of a National Emergency.

8. For several weeks, the Debtor sought a voluntary extension of the closing date from the Sellers, only to initially receive a document (pre-negotiation agreement) requesting the Debtor waive all rights and defenses. After this was rejected, the Sellers have continued to

insist that any extension of the time to close (short and unrealistic as it may be) must be subject to a time of the essence forfeiture requirements, even though no one truly knows when the crisis will end and business will get back to normal.

9. The crisis truly demands flexibility and mutual accommodation. Unfortunately, the Sellers here are playing hardball with the Debtors at this unique time in the Nation's history.

10. Rather than risk even the possibility of an unjust forfeiture, the Debtor has opted engage me and directed the filing of this Chapter 11 petition to preserve all of its rights, remedies and defenses under the Sale Contract while legal issues surrounding the Coronavirus are clarified.

11. The Debtor's rights under the Sale Contract have not been terminated, and in my view, likely will be redefined in the weeks and months to come. I fully understand that the crisis likely forms the factual predicate to employ a number of doctrines to suspend, or even excuse contractual performance under the principles of *force majeure*, impossibility of performance and frustration of the purpose.

12. Besides remedies and defenses arising out of the Coronavirus crisis, the Debtor independently gains the benefit of an additional sixty (60) day extension of the time in accordance with 11 U.S.C. Section 108(b) by virtue of the Chapter 11 filing. During the sixty (60) day period, the Debtor will intends to file an adversary proceeding against the Sellers for a determination of the parties' respective rights and obligations under the Sale Contract in light of the unique current events.

13. The Debtor has scheduled loans from investors to fund the deposit, and also incurred a number of debts to service providers and professionals for due diligence, title,

brokerage and legal matters in contemplation of being able to close under the Sale Contract. All of these efforts cannot possibly go to waste solely on the dictates of the Sellers at the time of a National Emergency. With the State Courts effectively closed, Chapter 11 is the best, and perhaps, the only available forum to protect the Debtor's rights and adjudicate important issues.

14. The Debtor's ultimate goal still remains to close under the Sale Contract based upon a reasonable and rational assessment of the crisis.

### Local Rule 1007-4 Disclosures

15. Pursuant to Local Rule 1007-4(a)(iv) and (v), no committees were formed prior to the filing of the Debtor's Petition.

16. Pursuant to Local Rule 1007-4(a)(vi), a list of the Debtor's twenty largest creditors is included as part of the Debtor's bankruptcy schedules, being filed herewith.

17. Pursuant to Local Rule 1007-4(a)(vii), the Debtor has no secured creditors.

18. Pursuant to Local Rule 1007-4(a)(viii), the Debtor's assets and liabilities are set forth in schedules being filed herewith.

19. Pursuant to Local Rule 1007-4(a)(ix), a list of the Debtor's equity holder, which is held in trust, is annexed hereto.

20. Pursuant to Local Rule 1007-4(a)(x), none of the Debtor's assets are in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents or secured creditor.

21. Pursuant to Local Rule 1007-4(a)(xi), the Debtor is a contract vendee, and does not yet own any real estate.

22. Pursuant to Local Rule 1007-4(a)(xii), the Debtor's books and records are located in Brooklyn, NY.

23.     Pursuant to Local Rule 1007-4(a)(xiii), the Debtor is not a party to any pending lawsuits.

24.     Pursuant to Local Rule 1007-4(a)(xiv), my company, GC Realty Advisors LLC is the non-member Manager and Chief Restructuring Officer of the Debtor.

25.     Pursuant to Local Rule 1007-4(a)(xv), the Debtor has no current employees, although the Debtor employs several service providers.

26.     Pursuant to Local Rule 1007-4(a)(xvi and xvii), the Debtor does not anticipate making any disbursements in the next thirty (30) days, unless the crisis miraculously ends much sooner than expected.

Dated: New York, New York
      April 1, 2020

_____
David Goldwasser, Managing Member of GC Realty Advisors LLC, Non-Member Manager of the Debtor